Home Insurance Company et al., Appellants, *v.* Continental Insurance Company, Respondent.

1. Insurance (Fire) — Meaning of Words "Pro Rata" in Policy of Reinsurance. The words "*pro rata*," as used in a contract of reinsurance, "The loss, if any, payable *pro rata* at the same time and in the same manner as by said companies," mean, according to the proportion which the amount of the policy of reinsurance bears to the amount of original insurance — that proportion, whatever it may be, remains fixed, and cannot be changed by any act of the reinsured in diminishing or increasing the amount of original insurance; when, therefore, the amount of original insurance is $10,000 and of reinsurance $5,000, the reinsurer is liable for half of any loss which may occur, and the fact that subsequently the original insurance is reduced to $2,000 does not alter the proportion, and in case of a loss render the reinsurer liable for the whole amount.

2. Evidence — Incompetency of Expert Evidence Tending to Contradict the Language of the Policy. The testimony of experts as to the usage and objects of underwriters in inserting the "*pro rata*" clause in policies of reinsurance, and tending to contradict plain language of the policy, is incompetent, for the reason that its meaning has been settled by the construction of the courts.

*Home Ins. Co.* v. *Continental Ins. Co.*, 89 App. Div. 1, affirmed.

(Argued January 26, 1905; decided February 3, 1905.)

Appeal from a judgment of the Appellate Division of the Supreme Court in the first judicial department, entered Feb-

ruary 13, 1904, affirming a judgment in favor of plaintiffs entered upon the report of a referee.

The nature of the action and the facts, so far as material, are stated in the opinion.

*George Richards* for appellants. By the main and principal obligation of the policy of reinsurance defendant obligated itself to pay the plaintiffs the full amount of their loss, which is less than $5,000. The *pro rata* words of the reinsurance rider do not aid the defendant at all. (*Hand* v. *W. F. Ins. Co.,* 57 N. Y. 41; *L. A. Corp.* v. *Thompson,* 170 N. Y. 94; *Ins. Co. of N. A.* v. *H. Ins. Co.,* 140 U. S. 565; *C. Ins. Co.* v. *Æ. Ins. Co.,* 138 N. Y. 21; *Ins. Co. of N. Y.* v. *A. M. M. F. Ins. Co.,* 70 App. Div. 69; *Uzielli* v. *B. M. Ins. Co.,* L. R. [15 Q. B. Div.] 1560.) The meaning which the defendant's counsel seeks to put upon the *pro rata* clause of the reinsurance rider is not supported either by authority or reason. (24 Am. & Eng. Ency. of Law, 247–273; *Hand* v. *W. F. Ins. Co.,* 57 N. Y. 41.) A comparison of the standard reinsurance rider now in use with the old form of insurance contract demonstrates beyond doubt the soundness of plaintiffs' contention. (*Hone* v. *M. S. Ins. Co.,* 1 Sandf. 137; 2 N. Y. 235.) If this court holds that the construction of the written contract is not clearly in favor of these plaintiffs then it should be held that the language is so far ambiguous as to make the expert testimony as to the universal practice and understanding of the insurance fraternity admissible. (*L. A. Corp.* v. *Thompson,* 170 N. Y. 94; *Underwood* v. *G. Ins. Co.,* 161 N. Y. 413; *Hall* v. *Jansen,* 4 E. & B. 504; 1 Joyce on Ins. § 246; *Astor* v. *U. Ins. Co.,* 7 Cow. 213; *Dow* v. *Whetten,* 8 Wend. 160; *The Reeside,* 2 Sumn. 567; *Atkinson* v. *Truesdell,* 127 N. Y. 234; *Smith* v. *Clews,* 114 N. Y. 190; *Newhall* v. *Appleton,* 114 N. Y. 144.)

*William C. Trull* for respondent. The obligation and liability of the defendant upon its contract of reinsurance is limited to such proportion of the loss as the amount of the

policy of reinsurance bears to the amount of the original insurance. (*Blackstone* v. *A. F. Ins. Co.*, 56 N. Y. 104; *C. R. E. & F. Ins. Co.* v. *Cashow*, 41 Md. 59; *I. M. Ins. Co.* v. *A. Ins. Co.*, 67 Ill. 362; *I. F. Ins. Co.* v. *H. Ins. Co.*, 68 Fed. Rep. 698; *H. Ins. Co.* v. *C. Ins. Co.*, 62 App. Div. 63; *H. Ins. Co.* v. *C. Ins. Co.*, 89 App. Div. 1.)   The liability under a re-insurance contract containing the prorating clause is the proportion which the entered amount of the risk in the reinsuring contract bears to the entered amount of risk entered in the original policy. (*Jackson* v. *St. P. Co.*, 99 N. Y. 125; *Hastie* v. *De Peyster*, 3 Caines, 196; *Herkenrath* v. *Ins. Co.*, 1 Barb. Ch. 363; *C. R. E. & F. Ins. Co.* v. *Cashow*, 41 Md. 59; 1 May on Ins. § 12; *C. Ins. Co.* v. *Æ. Ins. Co.*, 138 N. Y. 16; *Hone* v. *M. S. Ins. Co.*, 1 Sandf. 137; 2 N. Y. 235; 24 Am. & Eng. Ency. of Law [2d ed.], 250; May on Ins. [4th ed.] § 11; *P. Ins. Co.* v. *W. Ins. Co.*, 23 Penn. St. 250; *M. Ins. Co.* v. *W. A. Co.*, 145 Mass. 419; *F. F. Co.* v. *S. U. & N. Ins. Co.*, 173 N. Y. 241.)   The exception to the ruling of the referee striking out the evidence of usage and custom and opinions of experts as to the liability of the defendant is without force. (*M. S. Ins. Co.* v. *Hone*, 1 Sandf. 137; *Hone* v. *M. S. Ins. Co.* 2 N. Y. 235; Greenl. on Ev. §§ 277, 280, 282; *Sleight* v. *Rhinelander*, 1 Johns. 192; *Wheeler* v. *Newbould*, 16 N. Y. 392; Abbott's Tr. Ev. [2d ed.] 598; May on Ins. § 179d; *Schooner Reeside*, 2 Sumn. 567; 1 Story, 608; *Creery* v. *Holly*, 14 Wend. 48; *Bargett* v. *O. M. Ins. Co.*, 3 Bosw. 385; *Blackett* v. *Ins. Co.*, 2 Cr. & J. 255; *Barnard* v. *Keller*, 10 Wall. 383; *C. E. Bank* v. *Nassau Bank*, 91 N. Y. 74; *Woodruff* v. *Merchants' Bank*, 25 Wend. 523; *Hearne* v. *Ins. Co.*, 3 Cliff. 318.)

VANN, J.   This action was brought by two fire insurance companies against a third, upon a contract of reinsurance in the standard form, made under the following circumstances: On the 13th of June, 1895, the plaintiffs, "each acting and contracting for itself and not one for the other," by a policy otherwise joint in form, insured one Heilner for the

term of one year to an amount not exceeding $10,000 against loss by fire to a quantity of wool.   On the 16th of July, 1895, the defendant reinsured the plaintiffs against all loss, except as otherwise provided, under their said policy to Heilner to an amount not exceeding $5,000, "subject to the same risks, conditions, valuations, endorsements and assignments as are or may be assumed or adopted by the Home Insurance Company of New York and the Phœnix Insurance. Company of Hartford, Connecticut."   It was also provided that "the loss, if any," should be "payable *pro rata* at the same time and in the same manner as by said companies.   Other reinsurance permitted if desired."   These provisions appeared in what is called a rider attached to the standard form of policy in order to convert it into a contract of reinsurance.   It was provided in the body of the policy that the defendant should not be liable "for a greater proportion of any loss on the described property   *   *   *   than the amount hereby insured shall bear to the whole insurance, whether valid or not   *   *   *.   Liability for reinsurance shall be as specifically agreed hereon."

Prior to August 12th, 1895, the plaintiffs, at the request of Heilner and without notice to the defendant, reduced his insurance to the sum of $2,000 and on that day the property covered by their policy was injured by fire to an amount exceeding $3,000.   They paid Heilner $2,000, the amount of their policy as reduced, and they also paid $14.10 for the necessary expense of adjusting the loss.   They served proofs of loss on the defendant, claiming that they were entitled to $2,014.10, the whole amount paid by them, and more than sixty days thereafter commenced this action to recover that sum.   Upon the first trial they were awarded the whole amount claimed, but the judgment was reversed by the Appellate Division. (*Home Insurance Co.* v. *Continental Insurance Co.*, 62 App. Div. 63.)   Upon the second trial the defendant was held liable for $1,007.05, or one-half the amount claimed, and, as an offer of judgment for that sum had been served, costs were allowed against the plaintiffs and judgment was entered in their favor for the remainder only.   After

affirmance by the Appellate Division they appealed to this court.

The plaintiffs claim that the defendant under its policy of reinsurance is liable for the whole loss which they sustained under their policy of insurance. The defendant claims that it is liable for only one-half that amount, upon the theory that its contract is limited to such proportion of the loss as the amount of reinsurance bears to the amount of insurance.

The controversy turns upon the meaning of the following sentence as used in the policy of reinsurance: "The loss, if any, payable *pro rata* at the same time and in the same manner as by said companies." The mooted words are "*pro rata*," which mean, literally, "according to the rate," or, as ordinarily understood, "in proportion." The loss, therefore, is payable according to some proportion and must be apportioned in some way. Obviously the apportionment, as to parties, is to be made either between the plaintiffs alone or between the plaintiffs and the defendant; and as to amount, on the basis of facts existing at the date of the policy, or at the date of the loss. If it is between the plaintiffs simply, the provision is unnecessary, and is of slight concern to one and of no concern to the other party to the contract; but if between the contracting parties, it relates to the amount of reinsurance to be paid and has a function to perform of importance to both. We agree with the Appellate Division that the parties intended to divide the loss between themselves according to the proportion which the amount of the defendant's policy of reinsurance bears to the amount of the plaintiffs' policy of insurance.

The promise of the reinsurer was to indemnify the insurers to an amount not exceeding $5,000 against their liability under the policy for $10,000 to Heilner, by paying *pro rata* any loss sustained by them, that is, by paying any such loss in proportion to the sums covered by the respective policies. There was no promise to pay the full amount of insurance, but a certain proportion thereof. The defendant did not say to the plaintiffs, "I will pay your loss, not exceeding $5,000,"

but " I will pay my proportion of your loss not exceeding
$5,000." The proportion was fixed by the contract in accord-
ance with the amount of insurance furnished by either party
as stated in the policy of reinsurance, or at the ratio of 5,000
to 10,000, which is one-half. After the contract was made
the proportion could not be changed without the consent of
both parties. It could not be affected by any act of the plain-
tiffs in modifying their contract with Heilner. The right to
change their contract with him was unrestricted, but any
change could not affect the ratio of 5,000 to 10,000, which
was agreed upon as the basis of division. The amount of
insurance might be changed, but not the proportion which
the reinsurer was to pay if a loss occurred. The plaintiffs, by
agreement with the owner of the property, might reduce the
amount of his policy to $2,000 or increase it to $20,000, but
the promise of the defendant to pay in accordance with the
proportion originally fixed would remain unchanged. That
promise was to pay upon the ratio settled by the facts existing
at the date of the contract, and which were stated therein.
It was agreed that the amount of insurance was $10,000 and
that the amount of reinsurance should be $5,000, payable *pro
rata* in case of loss. There is no agreement to pay the whole
loss, but a *pro rata* share thereof, in proportion to the amounts
of the policies as they stood when issued. The premium paid
to the defendant is presumed to have been arranged with ref-
erence to those amounts. The plaintiffs received a premium
of $230 and they paid $115, or one-half thereof, to the defend-
ant, which assumed a like proportion of the loss.

While the " risks, conditions, valuations, endorsements and
assignments" of the policy of insurance might be changed by
the plaintiffs for their own convenience after the policy of
reinsurance was issued, it could have no effect on the defend-
ant's promise which was founded upon the amount of original
insurance existing when it was made. The plaintiffs by alter-
ing their risk with the insured could not alter the proportion
of any loss which the defendant had agreed to pay. That
proportion was determined by the defendant's policy in accord-

ance with the facts as they stood at its date and as they were therein recited, and while they might subsequently be changed the proportion would remain the same, because it was agreed upon as the basis of the contract to reinsure. The defendant took upon itself one-half of the plaintiffs' risk under a certain policy, specifically identified by number, not one-half of all risks outstanding. If the plaintiffs at the same time had had other policies on the same property not referred to in the defendant's policy, the proportion would not have been changed, for it depended upon the ratio between the amount of the particular policy specified and that of the policy of reinsurance as issued.

The paragraph quoted from the body of the policy in suit is an apportionment clause which relates simply to policies of reinsurance as between themselves. (*Farmers' Feed Co.* v. *Scottish Union Ins. Co.*, 173 N. Y. 241.) It affects the adjustment between reinsurers only and would control the amounts to be contributed by defendant's policy and any other policy of reinsurance which might have been taken out by the plaintiffs. No question of that kind has arisen and the present controversy depends wholly upon the words of the reinsurance slip attached in the form of a rider. As we read those words they fix the proportion to be paid by the defendant in case of a loss according to the ratio which the amount of its policy bore to the amount of plaintiffs' policy when it was written. In no other way can adequate force be given to the words "*pro rata*," which by their ordinary meaning as used in the policy before us, as well as by the meaning given them by the courts when used under like circumstances in other policies, are the controlling words of the contract. This court has held that a policy without them means what the plaintiffs claim, and a policy with them what the defendant claims the contract in question means.

In an early case the words "*pro rata*" formed no part of the promise of the reinsurer, which was absolute in form. The agreement was "to make good unto the reinsured all such loss or damage, not exceeding" $10,000, "as should hap-

pen by fire to the property described." The original insurance was $22,000, the reinsurance $10,000 and the loss $14,373.76. A recovery of the whole amount of the reinsurance was sustained, although the reinsurer was insolvent and could not meet its contract with the insured. (*Hone* v. *Mutual Safety Ins. Co.*, 1 Sandf. 137; 2 N. Y. 235.)

Twenty-five years later a case was presented where the policy of reinsurance contained this clause: "loss, if any, payable *pro rata* at the same time with the reinsured." The insurance was $5,000, the reinsurance $2,500 and the loss $4,407.62. This court, after quoting the *pro rata* clause, said that it did not occur in the case last cited and then continued as follows: "By virtue of the first part of this clause the defendant is not bound to pay the full amount reinsured by its policy, but only such a proportion of the amount of the loss as is in the ratio of the amount of the reinsurance to the amount originally insured. Thus the defendant's reinsurance being for half the amount of the original insurance, the defendant is to pay half the loss." (*Blackstone* v. *Alemannia Fire Ins. Co.*, 56 N. Y. 104, 107.) The effect of the words under consideration is clearly shown by these cases, for in the earlier, where they were wanting, the promise was held to be absolute, while in the later, where they were present, it was held to be proportionate, or according to the ratio between the insurance and reinsurance.

The *Blackstone* case has pointed the way to judgment in various courts of high standing. (*Imperial Fire Ins. Co.* v. *Home Ins. Co.*, 68 Fed. Rep. 698; *Consolidated Real Estate & Fire Ins. Co.* v. *Cashow*, 41 Md. 59; *Illinois Mut. F. Ins. Co.* v. *Andes Ins. Co.*, 67 Ill. 362. See, also, *Continental Ins. Co.* v. *Ætna Ins. Co.*, 138 N. Y. 16, 21; *Ins. Co. of the State of New York* v. *Associated Mfrs. M. F. Ins. Corpn.*, 70 App. Div. 69; 174 N. Y. 541; 24 Am. & Eng. Encyc. [2d ed.] 267.)

Upon the trial the testimony of experts as to the usage and object of underwriters in inserting the *pro rata* clause in policies of reinsurance, although received by the referee, was

finally struck out upon motion of the defendant, against the objection and exception of the plaintiffs. The motion was properly granted for the evidence was incompetent. It did not tend to show the meaning of technical terms, nor place the referee in the situation of the parties so that he could construe their agreement from their standpoint when it was made. The effect of the evidence was to contradict the plain language of the policy, after its meaning had been settled by the construction of the courts. Usage cannot control law, nor change the legal meaning of a contract. (*Hone* v. *Mutual Safety Ins. Co.*, 1 Sandf. 137, 149 ; 2 N. Y. 235, 240 ; *Wheeler* v. *Newbould*, 16 N. Y. 392, 401 ; *Bigelow* v. *Legg*, 102 N. Y. 652, 654.)

The judgment should be affirmed, with costs.

BARTLETT, J. (dissenting). I am of opinion that the *pro rata* clause in the contract of reinsurance is properly construed by plaintiffs' counsel, and if it is desired to hold the original company to any fixed amount of insurance, the retainer clause must be used.

This practice has long prevailed in the insurance world, and to hold otherwise will greatly disturb the due course of business and possibly necessitate a change in the form of policies that have been long in use.

CULLEN, Ch. J., GRAY, O'BRIEN, HAIGHT and WERNER, JJ., concur with VANN, J.; BARTLETT, J., reads dissenting memorandum.

Judgment affirmed.