301 So.2d 65

**Charles A. BOSWELL, as Commissioner of Revenue**

v.

**SOUTH CENTRAL BELL TELEPHONE COMPANY, a corporation.**

**SC 643, 643–X.**

Supreme Court of Alabama.

Sept. 19, 1974.

William J. Baxley, Atty. Gen., Willard W. Livingston, Counsel, Dept. of Revenue, and Asst. Atty. Gen., and Philip C. Davis, Asst. Counsel, Dept. of Revenue and Asst. Atty. Gen., State of Alabama, for appellant.

Atley A. Kitchings, Jr., Birmingham; Steiner, Crum & Baker and Walter R. Byars, Montgomery, for appellee.

MERRILL, Justice.

A justiciable controversy was presented in this proceeding for a declaratory judgment brought by South Central Bell Telephone Company against Charles A. Boswell, as Commissioner of Revenue of the State of Alabama, after the Commissioner had demanded three categories of alleged abandoned funds from South Central under Act No. 63, Acts of Alabama 1971, Vol. I, p. 101, approved April 27, 1971, and listed in the 1958 Recompilation as Tit. 47, §§ 314–342, and known as the Uniform Disposition of Unclaimed Property Act.

There was no oral testimony as all the evidence consisted of stipulations and exhibits. The bill was filed and service accepted July 25, 1972.

The three categories of funds claimed were:

(1) Funds and property payable, returnable, or demandable by another prior to 1965. This property had a total value of $21,747.41, exclusive of unclaimed rate refunds).

(2) Unclaimed subscriber refunds collected by South Central under supersedeas in the 1954 rate case and ordered by the Alabama Public Service Commission (hereinafter referred to as "APSC") to be refunded to South Central's subscribers. The total value of the unclaimed rate refunds is $360,000.00.

(3) Unclaimed individual items with a value less than $10.00 each. The total value of such property items (exclusive of unclaimed rate refunds) is $10,777.32.

The trial court's decision was in favor of South Central in categories (1) and (2). The Commissioner appealed. The decision favored the Department of Revenue as to (3) and South Central cross-appealed.

### Category (1)

■ The question here is whether Act No. 63 is prospective or retroactive. If not retroactive, these claims are barred by the statute of limitations, Tit. 7, § 21, Code 1940. This question was presented in Douglas Aircraft Co. v. Cranston, 58 Cal. 2d 462, 24 Cal.Rptr. 851, 374 P.2d 819, 98 A.L.R.2d 298. Section 16 of their Act (identical with § 16 of Act No. 63) provides:

"The expiration of any period of time specified by statute or court order, during which an action or proceeding may be commenced or enforced to obtain payment of a claim for money or recovery of property, shall not prevent the money or property from being presumed abandoned property, nor affect any duty to file a report required by this Act or to pay or deliver abandoned property to the Commissioner of Revenue."

The Supreme Court of California held that the Act applied only to claims on which the statute of limitations had not run on the effective date of the Act. The California decision was followed in County Mutual Ins. Co. v. Knight, 40 Ill.2d 423, 240 N.E.2d 612. For the sake of brevity, we do not quote applicable excerpts from these two cases. We have been cited to no case from any state which has held this section of the Uniform Disposition of Unclaimed Property Act to be retroactive.

We choose to follow the decisions in these two states which have considered the retroactivity of § 16 of the Act. The reasoning in those cases presents, in our mind, the better view.

The trial court correctly held that the claims for funds acquired prior to 1965 were barred by the statute of limitations because they were demandable six years prior to the passage of Act No. 63.

### Category (2)

■ These unclaimed funds which were collected under the supersedeas from 1954 to 1963 were expended under an order of the Public Service Commission on December 9, 1968, directing South Central to ex-

pend the balance of unclaimed refunds on an additional rural construction program. Therefore, under § 4 of Act No. 63, the funds were neither "held or owing" by the utility and there was no duty on the utility to report them as abandoned property under § 11.

The trial court properly so held as to these funds.

The judgment is affirmed on the appeal.

### Cross-Appeal-Category (3)

The cross-appeal is concerned with the unclaimed individual items with a value less than $10.00 each,. totaling $10,777.22, which the court ordered South Central to pay to the Commissioner of Revenue. The trial court ordered these funds to be reported and paid to the Commissioner.

█ South Central contends that the "only logical and meaningful construction of Act No. 63 is that it does not require the report and remittance of any individual items of funds and other property of value of less than $10 each." In particular, it is argued that § 11 is clear in its reporting requirements and § 13 in its payment or delivery requirements. We do not agree.

The trial court specifically treated this argument in its findings as follows:

"I. UNCLAIMED INDIVIDUAL ITEMS OF A VALUE OF LESS THAN $10 EACH.

"South Central did not report or pay to Commissioner unclaimed items of funds and other property in possession of South Central with an individual value of less than $10 each. It is stipulated, and the Court finds, the total value of such property items (exclusive of unclaimed rate refunds) is $10,777.32.

"Section 11 of Act. No. 63 provides for the report of abandoned property to Commissioner and Section 13 provides for the payment or delivery of property to the Commissioner. Specifically, Section 11 of

the Act provides, in pertinent part, as follows:

" 'SECTION 11. REPORT OF ABANDONED PROPERTY.

"(a) Every person holding funds or other property, tangible or intangible, presumed abandoned under this Act shall report to the Commissioner of Revenue with respect to the property as hereinafter provided.

"(b) The report shall be verified and shall include:

"(1) The name, if known, and last known address, if any, of each person appearing from the records of the holder to be the owner of any property of the value of $10.00 or more presumed abandoned under this Act: * * * ' "

Section 13 provides, as follows:

" 'SECTION 13. PAYMENT OR DELIVERY OF ABANDONED PROPERTY.

"Every person who has filed a report as provided by Section 11 shall within 20 days after the time specified in Section 12 for claiming the property from the holder pay or deliver to the Commissioner of Revenue *all* abandoned property specified in the report * * * ' (Emphasis added)

"The Court upon consideration of the Act as a whole, giving due consideration to the foregoing sections and all other provisions of the Act, is of the opinion that it is the intent of the Alabama Legislature to require the report and payment or delivery to Commissioner of any and all funds and other property are presumed abandoned, the Act. With respect to what funds and other property are presumed abandoned, the words 'any' and 'all' are used interchangeably in the statute showing a clear intent to mean that all property defined in the statute is presumed abandoned under the proper circumstances.

"Specifically, Section 2(a) states that '*Any* demand, savings, or matured time deposit . . . ' is presumed abandoned

under the proper circumstances. Section 2(b), the words '*Any* funds paid in this state . . .' appear. Section 2(c), '*Any* sum payable on checks certified in this state . . .' Section 2(d), '*Any* funds or other personal property, tangible or intangible, removed from a safe deposit box . . .' Section 3(b) states, ' "Unclaimed funds," as used in this section, means *all* moneys held or owing. . .' Section 4(a), '*Any* deposit made by a subscriber with a utility to secure payment for, or any sum paid in advance for, utility services. . .' Section 4(b), '*Any* sum which a utility has been order to refund . . . together with any interest thereon, . . .' Section 5, '*Any* stock or other certificate of ownership, or any dividend, profit, distribution, royalty, . . .' Section 6, ' . . . *all* intangible personal property distributable in the course of a voluntary dissolution . . .' Section 7, '*All* intangible personal property and *any* income or increment thereon, held in fiduciary capacity . . .' Section 9, '*All* tangible and intangible personal property, not otherwise covered by this Act, including but not limited to and by way of illustration, money, stocks, bonds, certificates of membership in corporations, income, amounts due and payable under the terms of insurance policies. . .' " (The last paragraph was a footnote to trial court's findings.)

In Alabama Industrial Bank v. State ex rel. Avinger, 286 Ala. 59, 237 So. 2d 108, this court said:

"In determining the meaning of an act, the paramount purpose is to ascertain the legislative intent. State v. Seals Piano Co., 209 Ala. 93, 95 So. 451.

"The court looks for the legislative intent in the language of the act; that language may be explained; it cannot be detracted from or added to. The office of interpretation is not to improve the statute; it is to expound it; and the court knows nothing of the intention of an act, except from the words in which it is expressed, applied to the facts existing at the time. May v. Head, 210 Ala. 112, 96 So. 869. Rodgers v. Meredith, 274 Ala. 179, 146 So.2d 308.

"All particular rules for construing statutes must be regarded as subservient to end of determining legislative intent.

"The intention of the Legislature must primarily be determined from the language of the statute itself if it is unambiguous.

"To justify a departure from the language of the statute, there must be a moral conviction that its practical effect under existing law, the spirit of the whole statute and its legislative history, as well as the purpose to be accomplished, duly disclose the Legislature could not have intended such result under a rational, sensible construction.

"The general rule is that where the language of a statute is unambiguous, the clearly expressed intent must be given effect, and there is no room for construction.

"Courts can only learn what Legislature intended by what it has said, and have no right to stray into mazes of conjecture or search for an imaginary purpose, in construing statute. Dixie Coaches v. Ramsden, 238 Ala. 285, 190 So. 92; State v. Thames, Jackson, Harris Co., 259 Ala. 471, 66 So.2d 733.

"When the language is plain, it should be considered to mean exactly what it says. Ex parte Bozeman, 183 Ala. 91, 63 So. 201; Kimbrell v. State, 272 Ala. 419, 132 So.2d 132."

We agree with the trial court that the Legislature intended to cover "any" and "all" funds, but that the name and address of the owner of an individual claim less than $10.00 need not be reported.

The judgment is

Affirmed.

HEFLIN, C. J., and HARWOOD, MADDOX and FAULKNER, JJ., concur.